Robert J. Magee, Esquire
WORTH, MAGEE & FISHER, P.C.
515 Linden Street, Third Floor
Allentown, PA  18101
(610) 437-489
I.D. No.:  30911
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

| | |
|---|---|
| ARTHUR HERRING, III,<br>         Plaintiff,<br>   vs.<br><br>VINCENT MARTELLO,<br><br>MATTHEW CROMER,<br><br>CLIFFORD BARCLIFF,<br><br>MONTGOMERY COUNTY<br>COMMUNITY COLLEGE,<br><br>WHITPAIN TOWNSHIP,<br><br>JOSEPH C. STEMPLE,<br><br>WILLIAM BUNTING,<br><br>GEORGETTE JACOB,<br>         Defendants. | No.: 02-CV-2811<br><br>CIVIL ACTION<br><br><br><br><br><br>JURY TRIAL DEMANDED<br><br>THE HONORABLE STEWART DALZELL |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE 12(b)(6) MOTIONS OF WHITPAIN TOWNSHIP, JOSEPH C. STEMPLE, WILLIAM BUNTING AND GEORGETTE JACOB**

**I. STATEMENT OF THE CASE**

The Defendants, Whitpain Township, Joseph C. Stemple, William Bunting and Georgette Jacob (hereinafter the "Whitpain Defendants") have launched a plethora of attacks upon the sufficiency of the Plaintiff's Complaint asking for dismissal of:

(a) Counts II and III of the Complaint on the basis that, since the individual line officers did nothing wrong, liability cannot be imposed upon the municipal defendants (the township and Stemple);

(b)  Counts II and III on the basis that there are insufficient allegations to warrant the imposition of liability on the municipality and/or the supervisor;

(c)  Counts IV and V of the Complaint on the basis that the Second Amendment doesn't apply, the Plaintiff was not arrested (but he was detained for a short period of time, Defendant's Brief, unnumbered page 10), the Defendants had probable cause and otherwise did not act with malice and the Fifth Amendment does not apply;

(d)  All Counts against all Whitpain Defendants on the basis of qualified immunity;

(e)  Count VI on the basis that the Plaintiff has not alleged sufficient facts to bring him within the protection of §§ 1985 and 1986;

(f)  Count VII,VIII and IX because the Whitpain Defendants are immune under the Pennsylvania Political Subdivision Tort Claims Act;

(g)  The punitive damages claim against the township because § 1983 does not allow punitive damage claims against a municipality.

## II. THE STANDARD

Given the nature of these motions, the Court need look no further than the complaint.  In determining whether to grant a Rule 12(b)(6) motion, the Court must presume all factual allegations of the complaint to be true and all reasonable inferences are to be made in favor of the Plaintiff.  **_Jordan v. Fox, Rothschild, O'Brien and Frankel_**, **20 F.3d 1250, 1261 (3rd Circ., 1994).** "In determining whether a claim should be dismissed under 12(b)(6), a Court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." **_Id._** Under 12(b)(6), the Defendant bears the burden of demonstrating that the Plaintiff has not stated a claim upon which relief can be granted.  **_Moleski v. Cheltenham_**

*Township, et al.,* **2002 U.S. Dist. Lexis 12311 (2002)**. The issue isn't whether the Plaintiff will ultimately prevail but whether "it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. **Conly v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct.99, 102, 2 L.Ed.2d 80 (1957)**. To phrase the issue differently,:

> "When a Federal Court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a Plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims". **Scheurer v. Rhodes, 416 U.S. 232, 236, 40 L.Ed.2d 90, 94 S.Ct. 1683 (1974)**.

Although some Circuit Courts had imposed a "heightened pleading standard" in various types of cases, the Supreme Court, when squarely faced with the issue of whether or not there was a heightened pleading requirement in §1983 actions, decided that the pleading requirements for a §1983 action were the same as for every other type of case. Specifically, in **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)**, the Court held that the pleading requirements in a §1983 action were exactly the same as most other types of actions and it requires only a "short and plain statement of the claim showing that the pleader is entitled to relief". The Court went on to observe that F.R.C.P. 9(b) does impose a higher particularity requirement in some cases, but §1983 claims against municipal Defendants were not among the enumerated types of actions requiring more particularity. **Id.** See also, **Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1(2002)**. In both **Leatherman, supra** and **Swierkiewicz, supra**, the Court emphasized the language from **Conly v. Gibson, supra**, that the purpose of the notice pleading is to "give the Defendant fair notice of

what the Plaintiff's claim is and the grounds upon which it rests". ***Id., 122 S.Ct. at 998***. As observed by the Court in ***Swierkiewicz, supra***, "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits.  Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test".  ***Swierkiewicz, 152 L.Ed.2d at 116;*** *See also,* ***Scheuer v. Rhodes, supra***.  Plaintiffs asserting constitutional violations against a municipality need only meet the basic requirements of notice pleading and are not required to plead specific facts with particularity.  ***Chester v. Fredericksdorf, 2001 U.S. dist. LEXIS 16392 (E.D. Pa., 2001).***  Indeed, it has even been held that §1983 claims are sufficient to survive a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officer's conduct conformed to official policy, custom or practice.  See, e.g. ***Shah v. County of Los Angeles, 797 F.2d 743 (9th Circ., 1986)***.

With that background, let us turn to the allegations of the Complaint and measure them against the standards set forth above.

### III. ARGUMENT

**A.  PLAINTIFF HAS ADEQUATELY PLED/ALLEGED BOTH UNDERLYING CONSTITUTIONAL VIOLATIONS BY THE INDIVIDUAL OFFICERS AND A MUNICIPAL/SUPERVISORY CUSTOM, POLICY OR PRACTICE.**

The first attack upon the Complaint that is launched by the Defendants to Counts II and III of the Complaint in which the Defendants argue that the Plaintiff has not adequately alleged that the individual Whitpain Defendants violated the constitutional rights of the Plaintiff and therefore the municipal Defendants cannot be held liable. The Defendants further argue that the Plaintiffs have failed to adequately plead a case for municipal and/or supervisory liability.

The first prong of this argument is adequately answered by reference to ¶¶ 21-34, and 52 and 54 of the Complaint. Therein, the Plaintiff sets forth sufficient allegations to support a claim for, *inter alia*, violation of his Fourth Amendment Rights- an arrest without a warrant, probable cause or other legal justification, the filing of unfounded charges with malice and without probable cause and the seizure and retention of his property without a warrant, probable cause or due process of law.

As to the sufficiency of the allegations regarding municipal and/or supervisory liability, it is acknowledged that there is no *respondeat superior* liability for the §1983 claims being asserted by the Plaintiff. There must be some conduct by the supervisor that played a role in the wrongful conduct or, as to the Township, there must be a policy or custom. However, a failure to train allegation is sufficient at this juncture of the proceedings.

Failure to train as a viable Section 1983 theory of liability was first enunciated in **City of Canton v. Harris, *489 U.S. 378, 103 L.Ed.2d 412, 109 S.Ct. 1197 (1989)***, wherein the Court stated that:

> "We hold today that the inadequacy of police training may serve as the basis of §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact". ***Id.***

Contrary to the assertions of the Defendants, in ¶ 40 of the Complaint (which is incorporated into Counts II and III of the Complaint, see ¶¶ 43 and 47), the Plaintiff alleges that it was the policy, practice and/or custom of the Defendants herein named to inadequately supervise and train its police officers. In ¶¶ 36, 45 and 49, the Plaintiff alleges that the Township and the Chief failed to adequately and properly train their officers in proper police procedures and the Plaintiff then details the specific areas where that training was lacking. In ¶¶ 46 and 50, the Plaintiff alleges that the failure to

train demonstrated the requisite deliberate indifference to the rights of citizens and caused the violations.  While the Complaint, at least in the Counts referencing the theories against the Whitpain municipal and supervisory personnel, does not use the magic phrase that the failure to train was a "policy" or "custom", the absence of these buzzwords does not make the Complaint inadequate.  The plaintiff has alleged in the above referenced paragraphs the language required by the Supreme Court to support a failure to train claim, and that is all that is required.  When the Complaint is read in the light most favorable to the Plaintiff and giving the Plaintiff the benefit of all reasonable inferences, **_Jordan v. Fox, Rothschild, O'Brien and Frankel_**, **_20 F.3d 1250 (3rd Circ., 1994)_**, the existence of a "policy" and/or "custom" regarding this failure to train is there by direct language and by inference.

In addition, as to the supervisory personnel, the Defendants concede that there can be supervisory personnel if the supervisor plays a role in the wrongful conduct. **_Andrews v. City of Philadelphia, 895 F.2d 1469 (3rd Circ., 1990)._**  Personal involvement and therefore personal responsibility will attach if the supervisory personnel was directly involved or had actual knowledge of what was going on and acquiesced in the unconstitutional conduct.  **_Rode v. Dellarciprete, 845 F.2d 1195 (3rd Circ., 1998)_**.  The Defendants complain that the Plaintiff failed to allege that the Chief personally directed any of the activities about which the Plaintiff complains, and cites the former law of this Circuit that allegations along these lines must be made with appropriate particularity.  However, in **_Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)_**, the United States Supreme Court made it clear that §1983 actions do not have any type of heightened pleading requirement and all that is required is a "short and

plain statement of the claim". *Id.*  In this regard, see ¶¶ 22, 24, 27-30, 33, 36, 48, 52 and 54 of the Complaint. Since the allegations of the complaint meet this minimal standard, the Defendant's Motion should be dismissed.

In essence, it appears that the Defendants' major complaint is that the Plaintiff has not pled any evidence to support the various claims made against the individual officers and the municipal Defendants.  See, e.g., Defendants' Brief, unnumbered page 5 ("Plaintiff has failed to allege properly and provide any factual basis that the Township acted with deliberate indifference";  "Plaintiff has failed to allege that Police Chief Joseph Stemple personally directed the officers to go to Montgomery County Community College to detain and/or arrest Plaintiff or to charge him with disorderly conduct".) Under the notice pleading requirements of F.R.C.P. 8 and the jurisprudence of this Circuit, the plaintiff is not required to do more, at this stage of the proceedings.

### C.  THE PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A CLAIM FOR A FOURTH AMENDMENT VIOLATIONS IN THE NATURE OF FALSE ARREST, UNWARRANTED SEIZURE AND RETENTION OF HIS PROPERTY AND MALICIOUS PROSECUTION.

The Defendants next assert that the claims must be dismissed because the police had probable cause to make the arrest. [1]

However, the Defendants bootstrap their way to this conclusion by asserting that wearing a holstered firearm "…is clearly a hazardous act which serves no legitimate purpose to the actor", Defendants' Brief, unnumbered p. 8, and therefore the arrest for disorderly conduct was justified.  The Defendants' motion on this claim appears to be solely based on the Defendants own conclusion about what was, and what was not, reasonable - "reasonable officers…would have concluded that probable

---

[1] Indeed, at one point, the Defendants even argue that the Plaintiff was never arrested.  See, Defendants' Brief, unnumbered page 8.

cause existed". *Id., p. 9*; "…it is clear that moving Defendants possessed probable cause to detain Plaintiff", *Id.*; "moving Defendants were well within their official duties to detain Plaintiff", *Id., p. 8*.  However, the Defendants fail to identify what reason the police had to believe that a crime was being committed or that criminal activity was afoot or to otherwise justify the initial stop, the subsequent detention and the arrest. .

In **Brown v. Texas, 443 U.S. 47, 61 L.Ed.2d 357, 99 S.Ct. 2637 (1979)**, the Court stated, " Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person…and the Fourth Amendment requires that the seizure be reasonable". *Id., 443 U.S. at 50.*  This longstanding principal was reiterated in **Fields v. Omaha, 810 F.2d 830 (8th Circ., 1987)**.  In that case, the §1983 Plaintiff was walking down the middle of the street at 10:30 at night and was accosted by a member of the Omaha Police Force.  When she refused to identify herself, she was arrested under an Omaha Ordinance, and that charge was eventually dismissed.  In the ensuing 1983 action, the jury found in favor of the defendants. On appeal, the Circuit Court, after holding that the Ordinance was unconstitutionally vague, went on to not only hold that the officer was not entitled to a qualified immunity defense, but reversed the jury finding in favor of the Defendant officer and remanded the case to the Trial Court for a determination of the amount of damages to which the Plaintiff was entitled.  The Court held, as a matter of law, that the original stop was invalid since the officer lacked any reasonable suspicion necessary to initially stop and detain the Plaintiff.

So too, in this case, at least at the pleading stage, the Plaintiff asserts only that he was lawfully upon the premises of the college, and was wearing an unconcealed and holstered firearm when he was accosted and eventually arrested.  The

Defendants' bald and unsupported conclusions that such activity by the Plaintiff was a hazardous activity, and that it served no legitimate purpose of the Plaintiff, cannot be considered by this Court in ruling upon the motion.

A similar conclusion is mandated as to the claim for malicious prosecution. In **_McKibben v. Schmotzer_, 700 A.2d 484 (Pa. Super., 1997)**, the Court identified the elements necessary to prevail upon a claim for malicious prosecution as follows:

1. That the Defendant initiated criminal proceedings. In this regard, see ¶ 26;

2. That the proceedings ended in the Plaintiff's favor. See, ¶ 27;

3. That the proceedings were instituted without probable cause. See, ¶¶ 31 and 32, and;

4. That the Defendant acted maliciously for purposes other than bringing the Plaintiff to justice. See, ¶¶ 31-33.

Since the plaintiff has alleged the necessary elements of the unlawful conduct, and, given the limited notice pleading required by F.R.C.P. 8, it is respectfully submitted that the Plaintiff has sufficiently alleged a violation of the constitutional rights of the Plaintiff sufficient to withstand this 12(b)(6) motion.

### D.  NEITHER THE INDIVIDUAL DEFENDANTS NOR THE MUNICIPALITY ARE ENTITLED TO A QUALIFIED IMMUNITY DEFENSE.

The Defendants' next argument is that the Defendants are entitled to dismissal of the claim on the basis of qualified immunity.[2] Again, it appears that the Defendants' claim of qualified immunity is predicated upon the individual officers' (or at least Counsel's) subjective belief as to what was reasonable and what was not reasonable. In this particular case, qualified immunity will be a defense for the individual officers

---

[2] Although the motion is couched in terms of all Whitpain Township Defendants, it is clear that the defense of qualified immunity is not available to the Municipality. See, eg., **_Owen v. City of Independence_, 445 U.S. 622 (1980)**; **_Hynson v. City of Chester_, 827 F.2d 932 (3rd. Circ., 1987)**.

only if they can demonstrate that the Fourth Amendment principals do not clearly prescribe their actions in this case. **_Anderson v. Creighton, 483 U.S. 635 (1987); Fields v. Omaha, supra._** The qualified immunity protects police officers whose conduct is objectively reasonable. **_Id._** If a reasonable officer would have known that his conduct violated the rights of the Plaintiff, then the Defendant officer is not entitled to qualified immunity for his actions. **_Bartholomew v. Commonwealth of Pennsylvania, 221 F.3d. 425 (3rd Circ., 2000)_**; **_DeBellis v. Kulp, supra._** In this particular case, the right under scrutiny is the right of the Plaintiff to be free from unreasonable searches and seizures and to be free from arrest unless there is probable cause. "Probable cause to arrest exists when the facts and circumstances within the arresting officers knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been committed or is being committed by the person to be arrested". **_Orsatti v. New Jersey State Police, 71 F.3d. 480 (3rd Circ., 1995)_**.

As noted above, the only information that is available from the Complaint is that the Plaintiff was lawfully upon the premises of the Montgomery County Community College wearing an unconcealed, holstered firearm. The only argument for a reasonable suspicion or probable cause for arrest that the Defendants make is that the Plaintiff, by being so attired, in broad daylight, on a public facility, committed the crime of disorderly conduct. The Defendants point to no case authority or other precedent which establishes that this conduct constitutes a crime and the undersigned was unable to find any. The question then becomes, on the limited record now before this Court (consisting solely of the Complaint) whether the individual Whitpain Defendants are entitled to a qualified immunity defense. It is respectfully submitted that this Court

cannot, at this juncture, state that a reasonably well-trained police officer could conclude that a crime, in fact, had been committed, or that there was some articulable, objective fact which would lead a reasonably well-trained police officer to conclude that criminal activity was afoot.

The facts pled in this complaint are startlingly similar to the facts in ***Fields v. Omaha***, ***supra***, where the 8th Circuit Court of Appeals held that, as a matter of law, the officer was not entitled to a qualified immunity defense, given the lack of probable cause or reasonable suspicion, and for that reason, the qualified immunity defense must fail in this case.

### E.  AT THIS STAGE OF THE PROCEEDINGS, THE POLITICAL SUBDIVISION TORT CLAIMS ACT OFFERS NO IMMUNITY TO THE DEFENDANTS, GIVEN THE ALLEGATIONS OF THE COMPLAINT.

The Defendants next move for dismissal of Counts VII, VIII and IX of the complaint insofar as they assert state law claims.  According to the Defendants, such dismissal is warranted because the Tort Claims Act grants a local agency and its employees "absolute immunity".  Defendants' Brief, unnumbered page 15.  That is an incorrect statement of the law.

The Political Subdivision Tort Claims Act does provide limited immunity both to this municipality and to the individual Defendants.  However, in addition to the eight enumerated exceptions to the general grant of immunity (none of which apply to this particular case) the immunity provisions do not apply when:

> "In any action against a local agency or employee thereof for damages on account of an injury caused by the act of an employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct".  42 Pa. C.S. § 8550.

The elements of a state law claim for false arrest or false imprisonment are an arrest made without probable cause or an arrest made by a person without privilege to do so.  **_McGriff v. Vidovich, 699 A.2d 797 (1997)_**, see also, **_Pennsylvania Suggested Standard Jury Instruction, § 13.04_**.  Also see, **_Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289 (1994)(the elements of false imprisonment are the detention of another person and the unlawfulness of that detention)._**

The elements of a cause of action for malice prosecution are that the proceedings were brought with malice, that there was no probable cause and that the proceedings were terminated favorably to the accused.  **_Cap v. K-mart Discount Stores, 357 Pa. Super. 9, 515 A.2d 52 (1986)_**.

In Count VIII, the Plaintiff has plead that the arrest was made without probable cause, which amounts to the detention of the Plaintiff which was unlawful because there was no probable cause for the arrest.  In Count IX, the Plaintiff has plead that the Defendants commenced criminal proceedings against the Plaintiff, that they were acting with malice and without probable cause, and that the proceedings terminated favorably to the Plaintiff.

While it is acknowledged that the Defendants can be immune from these state claims, such immunity will only attach after a judicial determination that the Defendants engaged in willful misconduct.  On the pleadings stage, there is just no basis upon which such a determination can be made.  As observed by this Court on several occasions, an arrest made without probable cause when the officer knew there was no probable cause is exactly the type of willful misconduct which would deprive the Defendants of the immunity otherwise afforded under the Political Subdivision Tort Claims Act.  See, eg., **_Moleski v. Cheltenham Township, et al., 2002 U.S. Dist. Lexis 12311 (2002)_** and **_DeBellis v. Kulp, 166 F.Sup.2d 255, 279 (Ed. Pa., 2001)(no_**

***immunity for assault and battery if shown that officers acted intentionally and knew that the force was not reasonable under the circumstances)***.

As observed by the Honorable Charles B. Smith in **_Moleski v. Cheltenham Township, et al.,_** supra,

> "At this early juncture and in the absence of any argument by the parties, the Court cannot make a finding that the actions of the Defendant officers did not constitute a crime, actual malice, or willful misconduct". **_Id., at 37_**.

Likewise in this case, at the pleading stage, with no depositions, no affidavits and no evidence, and the only thing available for the Court to make the decision being the allegations of the complaint, it is respectfully submitted that the Court is not in the position to make a determination that the actions complained of by the Plaintiff in the Complaint did not constitute a crime, actual malice or willful misconduct,  Thus, the Defendants motion based upon the Political Subdivision Tort Claims Act must be dismissed.

### F.  PUNITIVE DAMAGES AGAINST THE TOWNSHIP

The Plaintiff agrees that, insofar as the Complaint can be read as seeking punitive damages against the Township and against the individuals in their official capacities, the Defendants' motion should be granted.

### G.  PLAINTIFF'S CLAIMS UNDER §§1985 AND 1986

The Plaintiff agrees to dismissal of Count VI of the Complaint insofar as the Plaintiff's claims are predicated upon 42 U.S.C. §§1985 and 1986.

Respectfully Submitted,

_____
Robert J. Magee, Esquire
WORTH, MAGEE & FISHER, P.C.
Attorney for Plaintiff
515 Linden Street, Third Floor
Allentown, PA  18101
610-437-4896
Attorney I.D. 30911

## CERTIFICATE OF SERVICE

    I, Robert J. Magee, Esquire, hereby certify that I served a true and correct copy of Plaintiff's Brief in Opposition to the 12(b)(6) Motions of Whitpain Township, Joseph C. Stemple, William Bunting and Georgette Jacob by First Class Mail, to the individual, at the address and on the date indicated below:

John Randolph Prince
Levin Legal Group, P.C.
1402 Masons Mill Business Park
1800 Byberry Road
Huntington Valley, PA 19006

Joseph J. Santarone, Jr, Esq,
Marshall, Dennehey
Suite 1002, One Montgomery Plaza
Norristown, Pa. 19401

    __8-9-02_____
Date

                                                                      Robert J. Magee, Esquire
Attorney for Plaintiff
515 Linden Street, Third Floor
Allentown, PA 18101
(610) 437-4896
I.D. No.: 30911

**Robert J. Magee, Esquire**
**WORTH, MAGEE & FISHER, P.C.**
**515 Linden Street, Third Floor**
**Allentown, PA  18101**
**(610) 437-489**
**I.D. No.:  30911**
**Attorney for Plaintiff**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PA

| | | |
|---|---|---|
| **ARTHUR HERRING, III,** | : | |
| Plaintiff, | : | No.: 02-CV-2811 |
| vs. | : | |
| | : | |
| **VINCENT MARTELLO,** | : | CIVIL ACTION |
| | : | |
| **MATTHEW CROMER,** | : | |
| | : | |
| **CLIFFORD BARCLIFF,** | : | |
| | : | |
| **MONTGOMERY COUNTY COMMUNITY COLLEGE,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **WHITPAIN TOWNSHIP,** | : | |
| | : | |
| **JOSEPH C. STEMPLE,** | : | THE HONORABLE STEWART DALZELL |
| | : | |
| **WILLIAM BUNTING,** | : | |
| | : | |
| **GEORGETTE JACOB,** | : | |
| Defendants. | : | |

**ORDER**

**AND NOW** this _____ day of _____, 2002, upon consideration of the 12(b)(6) motion of the Whitpain Township Defendants, and the Plaintiff's Response thereto, **IT IS HEREBY**

**ORDERED, ADJUDGED and DECREED** that Count VI of the Complaint be and hereby is **DISMISSED** with Prejudice;

Insofar as the Complaint seeks punitive damages against Whitpain Township, that Motion is **GRANTED**;

In all other regards, the Motion is **DENIED**.

By the Court:

_____

Stewart Dalzell, J.