## RELEASE AND SETTLEMENT AGREEMENT

This AGREEMENT is entered into on the date set forth below by and among the MONTGOMERY COUNTY COMMUNITY COLLEGE (hereinafter referred to as the "COMMUNITY COLLEGE"), VINCENT MARTELLO, (hereinafter referred to as "MARTELLO"), MATTHEW KRONER, (hereinafter referred to as "KRONER"), CLIFFORD BARCLIFF (hereinafter referred to as "BARCLIFF"), WHITPAIN TOWNSHIP, (hereinafter referred to as " THE TOWNSHIP"), JOSEPH STEMPLE, (hereinafter referred to as "STEMPLE"), WILLIAM BUNTING, (hereinafter referred to as "BUNTING"), GEORGETTE JACOB, (hereinafter referred to as "JACOB") and ARTHUR HERRING, (hereinafter referred to as "HERRING").

### Recitals

WHEREAS, HERRING entered the property of the COMMUNITY COLLEGE with a firearm which began a chain of events leading to criminal charges against HERRING by THE TOWNSHIP and the temporary withholding of his firearm; and

WHEREAS, a dispute arose regarding the COMMUNITY COLLEGE'S policy concerning the possession of firearms on campus, the criminal charges filed by THE TOWNSHIP after HERRING appeared at the COMMUNITY COLLEGE with a firearm and the temporary withholding of the firearm; and

WHEREAS, HERRING filed a Complaint in the United States District Court for the Eastern District of Pennsylvania at Civil Action No. 02-cv-02811 (hereinafter referred to as the "Action"), against the COMMUNITY COLLEGE, MARTELLO, KRONER and BARCLIFF and THE TOWNSHIP, STEMPLE, BUNTING and JACOB; and

WHEREAS, the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB deny that they have engaged in any wrongdoing or that they have any liability whatsoever to HERRING.

NOW, THEREFORE, intending to be legally bound hereby, it is agreed by and among HERRING and the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB, that this matter shall be settled and compromised on the following terms and conditions:

### Definitions

1. **Definitions.** The words and phrases that are capitalized in this AGREEMENT shall have the meanings set forth in this paragraph and the subparagraphs of this paragraph unless the context clearly indicates otherwise.

   a. AGREEMENT. The term "AGREEMENT" shall mean this AGREEMENT by and among HERRING and the COMMUNITY COLLEGE, MARTELLO, KRONER,

BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB.

b. INCLUDES or INCLUDING. The terms "INCLUDES" and "INCLUDING" shall mean inclusive of but not limited to and/or by way of example and not limitation.

c. COMMUNITY COLLEGE. The term "COMMUNITY COLLEGE" shall mean the MONTGOMERY COUNTY COMMUNITY COLLEGE.

d. THE TOWNSHIP. The term "THE TOWNSHIP" shall mean WHITPAIN TOWNSHIP.

e. RELEASED CLAIMS. The term "RELEASED CLAIMS" shall mean and INCLUDE all claims, demands, damages, actions, causes of actions, suits at law or in equity, charges, debts, dues, costs, sums of money, attorneys' fees, accounts, bills, judgments, rights, demands, or otherwise, of whatever kind or nature, both civil or criminal or mixed, (herein "RELEASED CLAIMS"), known or unknown, accrued or unaccrued, contingent or non-contingent, arising out of all matters referred to in the Complaint filed by HERRING at Civil Action No. 02-CV-02811 and in the criminal proceeding against HERRING, whether or not capable of proof as of the date of this AGREEMENT, whether common law or statutory, whether or not now recognized, that HERRING, or anyone claiming by, through or under HERRING, in any way might have, or could have, against any of the RELEASED PARTIES, INCLUDING: (a) all Claims for or because of any matter or thing, act, or omission, done or admitted or suffered to be done by the RELEASED PARTIES relating to HERRING and HERRING'S entrance onto COMMUNITY COLLEGE property, as well as the consequences or effects of any such matter or thing related to HERRING'S subsequent criminal charges and the temporary withholding of his firearm by THE TOWNSHIP; (b) all Claims pled in the Complaint as referenced previously herein, any claims that were required to be pled but were omitted, all claims that were or could have been pled pursuant to the Federal Rules of Civil Procedure, and all claims that arose from the same set of facts as those pled; (c) all claims under the Pennsylvania and United States Constitution, INCLUDING claims under the Second, Fourth and Fifth Amendments; (d) all Claims for discrimination based on age, religion, sex, race, disability, national origin, or any other protected characteristics, INCLUDING, claims under the Americans with Disabilities Act, the Civil Rights Act of 1866, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Titles IV, VI and VII of the Civil Rights Act of 1964, the Rehabilitation Act, Title IX of the Education Amendments of 1972, and all state and local analogues of such statutes, INCLUDING the Pennsylvania Human Relations Act; (e) all Claims for breach of contract, defamation, negligence, loss of consortium, breach of the covenant of good faith and fair dealing, misrepresentation, emotional distress, interference with contractual relations, equitable and promissory estoppel, breach of fiduciary duty, fraud, tort, and any other common law claims under the laws of any jurisdiction; (f) all claims under Section 1981, Section 1983, Section 1985, or Section 1988 of Title 42 of the

United States Code, or under any legal theories under any of those statutes, INCLUDING legal theories for state created danger, deliberate indifference, violation of substantive or procedural due process, theories for policy, practice or custom, failure to train or failure to supervise; (g) all claims under any education related statute, regulation, ordinance or policy, whether federal, state or local, INCLUDING the Public School Code, the Family Education Rights and Privacy Act, the Individuals with Disabilities Education Act, the Regulations and/or Standards of the State Board of Education or of the Secretary of Education; (h) all claims for joint or several liability; (i) all claims under Pennsylvania's Mental Health and Mental Retardation Act and its regulations; (j) all claims under any applicable policy; and (k) all claims for Attorneys fees. It is the specific and express intention of HERRING and of the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB that the above language relating to the description of the RELEASED CLAIMS shall be accorded the broadest possible interpretation.

f. RELEASED PARTIES. As used herein, the term "RELEASED PARTIES" shall mean (1) the COMMUNITY COLLEGE, (2) all entities affiliated with COMMUNITY COLLEGE, INCLUDING any of its schools, and its sponsoring School Districts (hereinafter "AFFILIATED ENTITIES"), (3) the COMMUNITY COLLEGE's and the AFFILIATED ENTITIES' past, current, and future employees, officers, directors, agents, owners, attorneys and legal representatives, in their individual and official capacities, as well as all of their heirs, assigns, parents, subsidiaries, partners, and affiliates, as well as all of their employees, agents, owners, officers, directors, partners, legal representatives and assigns, (4) the COMMUNITY COLLEGE's and the AFFILIATED ENTITIES' insurers, (5) VINCENT MARTELLO in his individual and official capacities, (6) MATTHEW KRONER in his individual and official capacities, (7) CLIFFORD BARCLIFF, in his individual and official capacities, (8) THE TOWNSHIP; (9) THE TOWNSHIP's past, current, and future employees, officers, directors, agents, owners, attorneys and legal representatives, in their individual and official capacities, as well as all of their heirs, assigns, parents, subsidiaries, partners, and affiliates, as well as all of their employees, agents, owners, officers, directors, partners, legal representatives and assigns, (10) THE TOWNSHIP's and the AFFILIATED ENTITIES' insurers, (11) JOSEPH STEMPLE, in his individual and representative capacities, (12) WILLIAM BUNTING, in his individual and representative capacities, (13) GEORGETTE JACOB, in her official and representative capacity, and (14) all other persons, corporations, benefit plans, insurers, and other entities whom/which might be claimed to be jointly and/or severally liable with any of the persons or entities named above with respect to any of the "RELEASED CLAIMS."

g. RELEASED PARTY. As used herein, the term "RELEASED PARTY" shall mean any of the RELEASED PARTIES as defined herein.

## Terms

2.  **Consideration.** HERRING and the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB expressly acknowledge and confirm that: (1) the only consideration for their signing this AGREEMENT are the terms and provisions stated herein; and (2) no other promise or AGREEMENT of any kind, save those set forth in this AGREEMENT, has been made by any person or entity whatsoever to cause them to sign this document.

3.  **Payments by the COMMUNITY COLLEGE.** The COMMUNITY COLLEGE will pay to HERRING and his attorneys, Worth, Magee and Fisher, a total amount of seventeen thousand five hundred dollars ($17,500.00) apportioned as follows: $7,500.00 will be paid to HERRING; and $10,000.00 will be paid to Worth, Magee and Fisher as attorneys fees and costs. Such payment shall be paid once this AGREEMENT becomes fully effective.

4.  **Payments by the TOWNSHIP.** The TOWNSHIP will pay to HERRING and his attorneys, Worth Magee and Fisher a total amount of seventeen thousand five hundred dollars ($17,500.00). $5,000.00 will be paid to HERRING; and $12,500.00 will be paid to Worth, Magee and Fisher as attorneys fees and costs. Said payment shall be paid once this AGREEMENT becomes fully effective.

5.  **HERRING's Duties.**

(a) HERRING shall not hereafter ever enter the campus or grounds of the COMMUNITY COLLEGE while in possession of any firearm, weapon as defined in 20 U.S.C.A. § 1415(k)(10)(D), or of any type or any look-alike firearm of any type, including but not limited to a toy gun, paintball gun, or pellet gun; and

(b) HERRING shall take all action and file all papers necessary to open the default judgments against MARTELLO and KRONER. HERRING hereby gives his attorneys, Worth, Magee and Fisher, full power of attorney to execute and file all papers and documents necessary to open aforesaid default judgments

6.  **Release.**

(A) **Unconditional and Irrevocable General Release.** In exchange for the covenants and conditions contained herein, HERRING unconditionally and irrevocably remises, releases and forever discharges and by this AGREEMENT does, for himself and his dependents, heirs, executors, administrators, successors and assigns, unconditionally and irrevocably remise, release, and forever discharge the RELEASED PARTIES, jointly and severally, of and from all RELEASED CLAIMS.

(B) **Joint Tortfeasor Release.** Notwithstanding anything herein to the contrary, it is agreed that should it be adjudicated that any RELEASED PARTY is a joint tortfeasor with any

person or entity of causing injury and/or damage to HERRING, individually and together, hereby release that portion or share of the cause of action which HERRING has against the RELEASED PARTY and discharge any and all damages attributable to the RELEASED PARTY in such cause of action, without in any way discharging or releasing the portion of the cause of action attributable to any non-settling tortfeasor or tortfeasors who have caused injury and/or damage to HERRING. HERRING does hereby credit and satisfy that portion of the total amount of damages to HERRING which have been caused by the negligence or other liability producing conduct (INCLUDING that under theories of strict liability in tort or other legal theories raised in the pleadings), if any, of the RELEASED PARTIES as hereinafter may be determined in future trial, and HERRING does hereby release and discharge that pro rata share, fraction, portion and percentage of the total cause of action and claim for damages against the RELEASED PARTIES which shall hereinafter, by future trial, be determined to be the sum of the pro rata share, portion, fracture or percentage of causal negligence as determined pursuant to the Comparative Negligence Act of Pennsylvania (42 Pa.C.S.A. § 7102-b), for which the RELEASED PARTIES are found to be liable. In further consideration of the aforesaid payment by or on behalf of the RELEASED PARTIES to HERRING, in order to save RELEASED PARTIES harmless, HERRING agrees to satisfy any claim, decree, verdict, judgment or award in which any person or entity recovers against the RELEASED PARTIES for contribution, and/or indemnity or otherwise. If it is held that the RELEASED PARTIES have any liability whatsoever for contribution, and/or indemnity or otherwise to any other party, HERRING will indemnify and save forever harmless RELEASED PARTIES against loss, damage, liability, cost and expense of every kind and nature, INCLUDING reasonable attorneys' fees and costs because of any and all claims, demands or actions made by others on account or in any manner resulting from HERRING's injuries, losses or damages. It is the intention of the parties to this AGREEMENT that it be in accordance with Pennsylvania law relating to the Uniform Contribution Among Joint Tortfeasors Act in conjunction with the Pennsylvania Comparative Negligence Act, and any other law or decision of Court found to be applicable.

7. **Confidentiality.** It is further understood and agreed and made a part hereof that neither HERRING nor his attorneys, representatives and agents will in any way seek to publicize or cause to be publicized in any news or communications media, INCLUDING but not limited to newspapers, magazines, journals, radio, or television, the facts or terms or conditions of this AGREEMENT. HERRING shall keep the terms of this AGREEMENT strictly confidential, except to the extent necessary to discuss same with their Attorneys and Accountants. In the event of any disclosure by HERRING or his attorneys or agents of any of the terms or conditions hereof, any RELEASED PARTY may file suit in any court of competent jurisdiction to enjoin such actions. Notwithstanding the foregoing, the Parties hereto acknowledge that this AGREEMENT is a public document and that the COMMUNITY COLLEGE and/or THE TOWNSHIP will be required to disclose the contents if requested.

8. **Acknowledgments and Representations.** HERRING understands, acknowledges and agrees that this AGREEMENT is in full satisfaction for all damages, real or claimed, arising as a result of any act or inaction of the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING, and/or JACOB or any other RELEASED PARTY and that they agree not to assert or prosecute any

further claims, lawsuits, actions, grievances or complaints before any court or administrative body against any RELEASED PARTY hereunder with respect to any RELEASED CLAIM.

9. **Actions by Others.** HERRING agrees and covenants that neither he nor any person, organization or other entity on his behalf, will file, charge, claim, sue or cause or permit to be filed, any individual action or class action for damages, INCLUDING injunctive, declaratory, monetary relief or other, against any RELEASED PARTY hereunder, involving any matter whatsoever which occurred at any time in the past up to date of this AGREEMENT or involving any continuing effects or any acts or practices which may have arisen or occurred prior to the date of this AGREEMENT. It is understood that if a class action is filed, that the mere filing of said action does not place HERRING in breach of this AGREEMENT provided that he take reasonable steps with all due speed to remove himself from the class.

10. **Claims and Interests of Others.** HERRING represents and warrants that no other person or entity has or has had any interest in the claims, demands, allegations, or causes of action referred to in this AGREEMENT and that HERRING has the sole right and exclusive authority to execute this AGREEMENT and that he has not sold, assigned, transferred, conveyed, or otherwise disposed of any claims, demands, obligations, or causes of action referred to herein.

11. **Construction.** All parties acknowledge that this AGREEMENT constitutes a compromise settlement of the subject dispute and that the terms hereof shall not be construed as an admission on the part of either party or as a validation or invalidation of any allegations.

12. **Lack of Precedent.** The RELEASED PARTIES' agreements in this matter and to the terms hereof shall not set a precedent, be construed as a practice or course of dealing of the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING, and/or JACOB or be used in any manner in an attempt to expand the rights of any COMMUNITY COLLEGE or TOWNSHIP employee, official or student, it being understood that the decision of the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB in this matter is based upon the unique and particular facts of this matter.

13. **Consultation with Counsel.** HERRING acknowledges that he was advised to consult with and was given an opportunity to be represented by legal counsel skilled in this area of the law. HERRING further acknowledges that no promise or inducement other than those expressed in this AGREEMENT have been made to him, and in executing this AGREEMENT, he is not relying upon any statement or representation made by the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and/or JACOB or any of their employees, board members, officials, agents, attorneys or representatives.

14. **Further Acknowledgments** As evidenced by Exhibit "A" attached hereto, HERRING has been advised of and hereby acknowledges and represents that he is aware:

(a) that various state and federal laws prohibit discrimination based on age, sex, race, color, national origin, disability, and veteran's status; and

(b) that these laws are enforced by or through applicable administrative agencies, such as the Pennsylvania Human Relations Commission and the Equal employment Opportunity Commission; and

(c) that further redress can be obtained through state and/or federal court; and

(d) that this AGREEMENT relates to and effectuates a release and/or waiver of all rights, INCLUDING: (i) rights established by The Pennsylvania Constitution; (ii) rights created by the United States Constitution and any Amendment thereto; (iii) rights under the Pennsylvania Human Relations Act; (iv) rights under the Public School Code of 1949, as amended; (v) rights under COMMUNITY COLLEGE policy; (vi) rights created by contract; (vii) rights created by the Rehabilitation Act of 1974; (viii) rights created by Title IX of the Education Amendments of 1972; (ix) rights under Titles IV, VI and VII of the Civil Rights Act of 1964; (x) rights under Sections 1981, 1983, 1985 and 1988 of Title 42 of the United State Code; and (xi) rights under ordinances of the TOWNSHIP; (xii) other rights that HERRING may have against the RELEASED PARTIES which may have been violated prior to the date of execution hereof; and

(f) that HERRING does not waive or release rights or claims that may arise after the date this AGREEMENT is executed; and

(g) that HERRING has received consideration for executing this AGREEMENT, waiving all rights he has for any claims that arose prior to the date of execution and releasing the RELEASED PARTIES from same, said consideration being the payments called for in this AGREEMENT;

(h) that HERRING believes, represents and asserts that this settlement is in his best interests; and

(i) that HERRING has been advised to consult with his attorney prior to agreeing to and executing this AGREEMENT.

15. **Voluntary and Knowing Execution of AGREEMENT.** HERRING acknowledges that he executed this AGREEMENT and agreed to all of its terms freely, voluntarily, knowingly and in accordance with the advice and recommendations of his attorney. HERRING further acknowledges and represents that he is under no disability or impairment that would prevent or impair (a) his ability to understand this AGREEMENT or its effects; or (b) his ability to enter into this AGREEMENT knowingly and voluntarily.

16. **Covenant Not to Sue.** HERRING agrees that he shall not institute any legal actions in any forum (whether judicial, administrative, arbitration, or otherwise; whether legal or equitable; whether federal, state, or local) with respect to any of the RELEASED CLAIMS. If HERRING does, he shall pay to the applicable RELEASED PARTIES all attorneys' fees, costs and expenses incurred by the RELEASED PARTIES in defending themselves against such RELEASED CLAIMS.

17. **Rules of Construction.** This AGREEMENT shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania and, to the extent applicable, the United States government. HERRING acknowledges and agrees that in consideration of the fact that he has carefully read, reviewed and considered the terms of this AGREEMENT and that he has had a fully opportunity to obtain legal advice from counsel of his choice in connection with this AGREEMENT, the normal principle of contract construction whereby all ambiguities are to be construed against the drafter shall not be employed in the interpretation and construction of this AGREEMENT.

18. **Modification and Waiver.** No modification or waiver of any of the terms of this AGREEMENT shall be valid unless in writing and executed with the same formality of this AGREEMENT.

19. **Counterparts.** In the event that two or more counterparts of this AGREEMENT are executed all such counterparts shall collectively constitute the same instrument.

20. **Headings.** The headings of any Article or Section hereof are for reference purposes only and shall not in any way affect the meaning or interpretation thereof.

21. **Severability.** All agreements and covenants herein contained are severable. In the event that any provision of this AGREEMENT should be held to be unenforceable, the validity and enforceability of the remaining provisions hereof shall not be affected thereby. Any court (or arbitrator) construing this AGREEMENT is expressly granted the authority to revise any invalid or unenforceable provision hereof in order to render same enforceable.

22. **Estoppel Statement.** HERRING hereby represents, warrants and certifies to the COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB, and the other RELEASED PARTIES that:

a. All of the facts set forth in this AGREEMENT are true and correct;

b. The COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING and JACOB, and other RELEASED PARTIES are justified in relying on the representation made herein by HERRING that the facts set forth in this AGREEMENT are true and correct;

c. HERRING agrees and understands that the COMMUNITY COLLEGE,

  MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING, and JACOB and others intend to rely upon the statements contained herein in agreeing to the terms and conditions of this AGREEMENT; and

 d. HERRING agrees that COMMUNITY COLLEGE, MARTELLO, KRONER, BARCLIFF, THE TOWNSHIP, STEMPLE, BUNTING, and JACOB and others may justifiably rely on the statements contained herein.

 IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, set their hands and seals on the dates indicated.

MONTGOMERY COUNTY COMMUNITY COLLEGE

By:_____ Date: _____

By:_____ Date: _____

WHITPAIN TOWNSHIP

By:_____ Dated: _____

ARTHUR HERRING

By:_____ Date: _____

Exhibit "A"

## NOTICE OF IMPORTANT RIGHTS

1. **YOU WILL LOSE YOUR RIGHT TO SUE.** By signing the Release and Settlement Agreement you will lose your ability to sue the Community College and/or the Township and/or any employees of either the Community College or the Township for anything that was done or not done prior to the date of the Agreement, and for the effects in the future of anything that was done or not done prior to the date of the Agreement. This means that you may not sue the Community College and/or the Township or any of its employees, officials, agents or attorneys either for any acts or inaction that occurred prior to the date of the Agreement.

<u>**You should not sign or execute the AGREEMENT because you will lose important rights you may have:**</u>

    a. **if you do not want to lose your claim to those rights, or**

    b. **if you feel your AGREEMENT to and signing these documents was or is coercive, discriminatory, or involuntary.**

You should also consult with your attorney or attorneys before signing these documents and make sure that you thoroughly review and understand the effect of these documents before signing them.

## Acknowledgment

    I, ARTHUR HERRING, hereby acknowledge and represent that I have read the foregoing notice and understand its meaning and have executed this acknowledgment after considering it and the recommendations by my attorney for a reasonable period of time.

Dated: _____         Signature: _____

## VERIFICATION

I, ARTHUR HERRING, have read the attached documents, INCLUDING the AGREEMENT and the Notice of Important Rights, and hereby state and acknowledge that the recitals and facts set forth therein are true and correct and that I understand the nature, fact and consequences of the release and waiver contained in the AGREEMENT.

I declare under penalty of perjury and under the laws of the United States of America and of the Commonwealth of Pennsylvania, particularly 18 Pa. C.S. § 4904 (relating to unsworn falsifications to authorities), that the foregoing is true and correct.

Dated: _____   Signature: _____